CASE NOS. 21-5734/5742

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

MARSHANE WOODS and
TERRY WOODS,

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT IN THE EASTERN DISTRICT
OF TENNESSEE, AT GREENEVILLE

BRIEF OF APPELLANTS

JENNIFER NILES COFFIN
Federal Defender Services of
  Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, Tennessee  37929
(615) 736-5047
Attorney for Marshane and Terry Woods

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................iii

STATEMENT REGARDING ORAL ARGUMENT ................................... 1

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ........................................................................................ 2

STATEMENT OF THE ISSUES PRESENTED...................................... 3

STATEMENT OF THE CASE AND RELEVANT FACTS ...................... 4

    A.  Background ........................................................................... 5

        1.  The initial conviction and 2005 sentence ................................. 1

        2.  The Fair Sentencing Act of 2010 and subsequent retroactive
           amendments to the drug offense levels  ................................. 9

    B.  The 2020 motion for a reduction under section 404 of the First
       Step Act of 2018.................................................................... 13

SUMMARY OF THE ARGUMENT.......................................................... 19

STANDARD OF REVIEW ...................................................................... 21

ARGUMENT ............................................................................................ 22

The District Court Miscalculated the Amended Guideline Range While
Lacking the Benefit of the Government's Current Position Regarding
Crack Penalties........................................................................................ 22

    A.  Marshane and Terry are not career offenders.............................. 24

    B.  The district court plainly erred in calculating Terry Woods' non-
       career offender range. .................................................... 34

i

C.  The government's current support for a 1:1 ratio
would have materially affected the § 3553(a) analysis................ 37

CONCLUSION ........................................................... 43

CERTIFICATE OF SERVICE ................................... 45

CERTIFICATE OF COMPLIANCE ......................... 45

DESIGNATION OF RELEVANT DISTRICT COURT
DOCUMENTS ...................................................... 46

# TABLE OF AUTHORITIES

## CASES

*Brown v. Owens*,
   No. 20-5510, 2021 U.S. App. LEXIS 14095
   (6th Cir. May 12, 2021) ........................................................ 27

*Bullard v. United States*,
   937 F.3d 654, 657 (6th Cir. 2019) ...................................... 27

*Chavez-Meza v. United States*,
   138 S. Ct. 1959 (2018) ......................................................... 21

*Danforth v. Minnesota*,
   552 U.S. 264, 271 (2008) ..................................................... 26

*Dorsey v. United States*,
   567 U.S. 260 (2012) ......................................................... 9, 10

*Gall v. United States*,
   552 U.S. 38 (2007) ............................................................... 21

*Hueso v Barnhart*,
   948 F.3d 324 (6th Cir. 2020) ............................................. 27

*In re Benson*,
   No. 20-1640, 2021 U.S. App. LEXIS 3755
   (6th Cir. Feb. 10, 2021) ....................................................... 27

*Kimbrough v. United States*,
   552 U.S. 85 (2007) ................................................................. 9

*Mathis v. United States*,
   136 S. Ct. 2243 (2016) ......................................................... 26

*McCormick v. Butler*,
   977 F.3d 521 (6th Cir. 2020) ............................................. 26

*Molina-Martinez v. United States*,
   136 S. Ct. 1338 (2016) ......................................................... 30

*Rivers v. Roadway Express*,
   511 U.S. 298 (1994) ............................................................. 26

*Rosales-Mireles v. United States*,
   138 S. Ct. 1897 (2018) ......................................................... 31

*Stinson v. United States*,
   508 U.S. 36 (1993) ............................................................... 25

*United States v. Alexander*,
   951 F.3d 706 (6th Cir. 2019) ............................................. 13

*United States v. Beamus*,
    943 F.3d 789 (6th Cir. 2019) ...................................................... 13, 27
*United States v. Boulding*
    960 F.3d 774 (6th Cir. 2020) ........................... 14, 21, 22, 27, 28, 30, 32
*United States v. Cordero*,
    973 F.3d 603 (6th Cir. 2020) ...................................................... 25
*United States v. Evans*,
    699 F.3d 858 (6th Cir. 2012) ...................................................... 25
*United States v. Foreman*,
    958 F.3d 506 (6th Cir. 2020) ...................................................... 21
*United States v. Havis*,
    927 F.3d 382 (6th Cir. 2019) (en banc)............................... 1, 19, 24, 25
*United States v. Jackson*,
    901 F.3d 706 (6th Cir. 2018) ...................................................... 30
*United States v. Jarvis*,
    999 F.3d 442 (6th Cir. 2021) ...................................................... 23, 29
*United States v. Jones*,
    980 F.3d 1098 (6th Cir. 2020) ...................................................... 22
*United States v. Maxwell*,
    991 F.3d 685 (6th Cir. 2021) ............................................ 14, 23, 28, 32
*United States v. Maxwell*,
    800 F. App'x 373 (6th Cir. 2020) ................................................. 23
*United States v. Montgomery*,
    998 F.3d 693 (6th Cir. 2021) ...................................... 23, 29, 30, 32, 37
*United States v. Smith*,
    959 F.3d 701 (6th Cir. 2020) ...................................................... 2
*United States v. Smithers*,
    960 F.3d 339 (6th Cir. 2020) ...................................................... 21
*United States v. Tate*,
    999 F.3d 374 (6th Cir. 2021) ...................................................... 26
*United States v. Walker*,
    No. 20-1555, 2021 U.S. App. LEXIS 11681
    (6th Cir. Apr. 20, 2021) ......................................................... 16
*United States v. Williams*,
    53 F.3d 769 (6th Cir. 1995) ...................................................... 25
*United States v. Woods*,
    187 F. App'x 524 (6th Cir. 2006)................................................. 9

# FEDERAL STATUTES AND RULES

18 U.S.C. § 3231 ................................................................ 2

18 U.S.C. § 3553(a) ..................................................*passim*

18 U.S.C. § 3553(a)(6) ..................................................... 16

18 U.S.C. § 3582(c)(1)(B) .................................................. 2

18 U.S.C. § 3582(c)(2) ..................................................... 13

21 U.S.C. § 841(a) ........................................................... 5

21 U.S.C. § 841(b)(1)(A) (2003) ....................................... 6, 8

21 U.S.C. § 841(b)(1)(A) .............................................. 10, 16

21 U.S.C. § 841(b)(1)(A)(iii) ............................................. 38

21 U.S.C. § 841(b)(1)(B) .............................................. 10, 16

21 U.S.C. § 841(b)(1)(B)(iii) ............................................. 38

21 U.S.C. § 846 ....................................... 5, 8, 19, 24

21 U.S.C. § 851 ...................................... 8, 9, 10, 11, 12

28 U.S.C. § 994(h) ........................................................ 15

28 U.S.C. § 1291 ............................................................ 2

28 U.S.C. § 2241 ........................................................... 27

28 U.S.C. § 2255 ........................................................... 27

Fair Sentencing Act of 2010,
    Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010) ........................... 9, 10

First Step Act of 2018,
    Pub. L. No. 115-391, 132 Stat. 5194 (2018) ........................ 13

First Step Act,
    Pub. L. No. 115-391, § 404 ...........................................*passim*

First Step Act,
    Pub. L. No. 115-391, § 404(a) .......................................... 14

First Step Act,
    Pub. L. No. 115-391, § 404(b) .......................................... 14

First Step Act,
    Pub. L. No. 115-391, § 404(c) ...................................... 14, 22

Sixth Cir. Rule 34(a) ...................................................... 1

# U.S. SENTENCING COMMISSION MATERIALS[1]

U.S.S.G. § 1B1.10 .................................................................. 13
U.S.S.G. § 1B1.11(b)(2).......................................................... 30
U.S.S.G. § 2D1.1..............................................................*passim*
U.S.S.G. § 2D1.1(c) (Supp. 2010) ............................................ 10
U.S.S.G. § 2D1.1(c)(3) ........................................................... 11
U.S.S.G. § 2D1.1(c)(4) ........................................................... 42
U.S.S.G. § 4A1.2(a)(2) (2004) ................................................. 35
U.S.S.G. § 4A1.2(a)(2).............................................................. 36
U.S.S.G. § 4B1.1 ................................................... 8, 12, 16, 31
U.S.S.G. § 4B1.1(a) ................................................................ 24
U.S.S.G. § 4B1.1(b)(1)......................................................... 8, 12
U.S.S.G. § 4B1.2 ........................................................ 19, 24, 25
U.S.S.G. § 4B1.2(b) ....................................................... 25, 30
U.S.S.G. App. C, amend. 742 (2010) ....................................... 29
U.S.S.G. App. C, amend. 782 (2014) ....................................... 11
U.S.S.G. ch. 5, pt. A (Sentencing Table) .............................. 8, 17
U.S. Sentencing Commission,
   *Report to the Congress: Career Offender Sentencing*
   *Enhancements* (2016) .......................................................... 15
U.S. Sentencing Commission,
   *Sourcebook of Federal Sentencing Statistics* tbl. D-14 (2020) .......... 32

## OTHER MATERIALS

EQUAL Act,
   S. 79, 117th Cong., 1st Sess. (2021-2022) ........................................ 38
EQUAL Act of 2021,
   H.R. 1693, 117th Cong., 1st Sess. (2021-2022)........................... 38, 39
Government's Supplemental Sentencing Memorandum,
   *United States v. Jefferson*, No. 1:21-cr-035, ECF No. 51 (W.D. Mich.
   Aug. 6, 2021) ................................................................ 41-42

---

[1] Except where noted, all references to the Guidelines are to the 2018 Manual.

Government's Sentencing Memorandum,
*United States v. White*, No. 1:20-cr-044, ECF No. 50 (W.D. Mich.
Aug. 20, 2021) ................................................................... 42

*Hearing on Oversight of the Dep't of Justice*, S. Jud. Comm., 117th
Cong. 1st Sess. (Oct. 27, 2021) (video recording) .............................. 41

U.S. Dep't of Justice,
Press Release 14-419, *Announcing New Clemency Initiative, Deputy
Attorney General James M. Cole Details Broad New Criteria for
Applicants* (Apr. 23, 2014) ................................................ 12

U.S. Dep't of Justice,
*Remarks as Prepared for Delivery by Deputy Attorney General James
M. Cole at the Press Conference Announcing the Clemency Initiative*,
Wash. D.C. (Apr. 23, 2014) ................................................ 12

U.S. Dep't of Justice, *Statement Before the S. Jud. Comm. Hearing on
Examining Federal Sentencing for Crack and Powder Cocaine* (June
22, 2021) ................................................................... 39

## STATEMENT REGARDING ORAL ARGUMENT

In July 2021, the district court granted sentence reductions under section 404 of the First Step Act of 2018 for brothers Marshane and Terry Woods, who were sentenced together in 2005 for conspiracy to distribute crack and powder cocaine. Until these reductions, each was serving a sentence of 360 months' imprisonment after their mandatory life sentences were commuted in 2017. Their new sentences are 306 months and 324 months, respectively, meant to reflect downward variances from the Guidelines' career-offender range of 360 months to life.

 The first question in this appeal is whether the district court procedurally erred in calculating the brothers' amended guideline range. The answer depends on whether this Court's decision in *United States v. United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), applies retroactively in a section 404 proceeding—an important question the Court has not yet directly considered.

The arguments on this matter are sufficiently complex that the decisional process would be significantly aided by oral argument. Pursuant to Rule 34(a), Rules of the Sixth Circuit, oral argument is requested.

# STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal of orders issued in the United States District Court for the Eastern District of Tennessee on July 22, 2021, granting Marshane and Terry Woods's separate requests for a sentence reduction based on the retroactive modification of their statutory penalty, as permitted by the First Step Act of 2018 and by way of 18 U.S.C. § 3582(c)(1)(B). (Mem. & Order (Marshane Woods), R. 262, PageID #884-91; Mem. & Order (Terry Woods), R. 264, PageID #894-901.) The district court originally exercised jurisdiction under 18 U.S.C. § 3231 and § 3582(c)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291. *United States v. Smith*, 959 F.3d 701, 702 (6th Cir. 2020).

Marshane Woods filed a notice of appeal on August 2, 2021. (Notice of Appeal, R. 266, PageID #904.) Terry Woods filed a notice of appeal on August 4, 2021. (Notice of Appeal, R. 269, PageID #909.)

## STATEMENT OF THE ISSUES PRESENTED

I.    Whether the district court procedurally erred when it treated Marshane and Terry Woods as career offenders for purposes of calculating their amended guideline range, or if not, whether remand is nevertheless appropriate because the district court was unaware that they are not career offenders under current law, a relevant consideration under 18 U.S.C. § 3553(a) in any event.

II.    Whether the district court procedurally erred when it failed to account for a guideline amendment that reduces Terry Woods' criminal history points, which if known would have materially altered either the amended guideline calculation or the § 3553(a) analysis.

III.    Whether remand is appropriate so that the district court may consider the motions in light of the Department of Justice's recently announced position in strong support of equalizing the penalties for crack and powder cocaine.

## STATEMENT OF THE CASE AND RELEVANT FACTS

Marshane and Terry Woods are brothers, born and raised in North Carolina. In 1986, at age 17 and 18, respectively, they were convicted of several offenses in North Carolina related to cocaine distribution. By the time they reached their early thirties, they had amassed a small collection of drug convictions, along with a number of minor offenses mostly related to speeding or other vehicular offenses. Neither had ever been convicted of an offense involving violence of any kind. In 2005, both were convicted in the Eastern District of Tennessee for conspiring to distribute and possess with intent to distribute crack and powder cocaine over a nearly three-year period. Due to the quantities charged and the government's election to rely on prior convictions to enhance their statutory penalties, both were sentenced to mandatory life in prison.

Twelve years later, in January 2017, President Obama granted each brother a sentence commutation, reducing their sentences to 360 months, the bottom of the career offender range that would have applied at their original sentencing but for the statutorily mandated life sentence. The next year, Congress opened the door for the court to grant

a further reduction, this time by way of section 404 of the First Step Act of 2018.

Now in their fifties, and as permitted by the First Step Act, the Woods brothers asked the district court to take a fresh look at their 30-year sentences. The district court granted their requests, reducing Marshane Woods' sentence to 306 months and reducing Terry Woods' sentence to 324 months. However, in doing so, the court did not consider the effect of changes in the law on their respective guideline calculations, and also lacked the benefit of the Department of Justice's just-announced position regarding the appropriate guideline range in crack cases. They therefore ask this Court to remand their cases so that the district court may consider their motions anew, using the correct guideline calculations and with all relevant information before it.

### A.    Background

*1.    The initial conviction and 2005 sentence.*  In 2003, Marshane and Terry Woods were charged along with two others with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of powder cocaine and 50 grams or more of crack, between February 2001 and September 23, 2003, in violation of 21 U.S.C. §§ 841(a), (b)(1)(A), 846.

(*See* Marshane Woods Presentence Investigation Report (Sealed) [PSR] ¶ 1.)[2] Marshane and Terry sold crack and powder cocaine from their home in North Carolina to be re-distributed in East Tennessee. (Marshane PSR ¶¶ 8-16.) As initially charged, the statutory penalty range for their offense was ten years to life. 21 U.S.C. § 841(b)(1)(A) (2003).

After a year passed without guilty pleas, and on the eve of trial, the government filed a notice under 21 U.S.C. § 851 in each brother's case, notifying the court of its intent to rely on prior "felony drug offenses" to enhance their statutory penalties—identifying two prior convictions in Marshane's case and five in Terry's case. (Marshane § 851 Notice, R. 90, PageID #227-28; Terry § 851 Notice, R. 91, PageID #229-31.)  The effect of these notices was to subject Marshane and Terry to mandatory life in prison if convicted. 21 U.S.C. § 841(b)(1)(A) (2003). They continued to trial, and the jury found them guilty as charged.

The Probation Office prepared presentence reports.  Based on trial testimony and evidence of drugs seized at the time of their arrest, the

---

[2] The PSR does not have PageID #s. Citations to each brother's PSR and other docket entries, as well as references to each brother, will hereafter be indicated by first name.

6

brothers were each held accountable for 2,195.53 grams of crack cocaine; 33,621 grams of powder cocaine; and 4,466.5 grams of marijuana. (Marshane PSR ¶ 18; Terry PSR ¶ 18.) Under the then-prevailing 100:1 powder-to-crack ratio and the drug equivalency rules for offenses involving multiple drugs (under which all drugs were converted into marijuana by a specified conversion ratio), the 2.19 kilograms of crack ended up having an outsized role in the drug quantity calculation. They were treated as 43,910.60 kilograms of marijuana, whereas the far greater amount of powder cocaine involved in the offense, 33.6 kilograms, was treated as 6,724.20 kilograms of marijuana. (*See* Marshane PSR ¶ 18.) In all, the brothers were held accountable for a total of 50,639.27 kilograms of converted "marijuana," the large majority of which reflected the artificially weighted 2.19 kilograms of crack. (*Id.*)

At the time, 50,639.27 kilograms of marijuana (again, mostly comprised of crack) corresponded to a base offense level 38 under § 2D1.1, to which was added 2 levels for the presence of a firearm. (Marshane PSR ¶¶ 23-31; Terry PSR ¶¶ 23-31.) For Marshane, with a total offense level 40 and in Criminal History Category V (due to having 12 criminal history points), the guideline range of imprisonment as calculated under § 2D1.1

was 360 months to life. (Marshane PSR ¶¶ 31, 49, 72.) U.S.S.G. ch. 5, pt. A (Sentencing Table) (OL 40/CHC V). For Terry, with a total offense level 40 and in Criminal History Category VI (due to having 19 criminal history points), the guideline range of imprisonment as calculated under § 2D1.1 was likewise 360 months to life. (Terry PSR ¶¶ 31, 54, 84.) U.S.S.G. ch. 5, pt. A (Sentencing Table) (OL 40/CHC VI).

This was not the end of the guideline calculations, however. Both brothers were also deemed career offenders under U.S.S.G. § 4B1.1, as they were convicted of conspiracy under 21 U.S.C. § 846 and each had at least two prior drug convictions, all of which offenses were understood at the time to satisfy the definition of "controlled substance offense." (Marshane PSR ¶ 29; Terry PSR ¶ 29.) With a statutory maximum of life under § 841(b)(1)(A) (2003), their career offender offense level was 37 and they were automatically placed in Criminal History Category VI (an increase by one category for Marshane), which likewise corresponds to a guideline range of 360 months to life. U.S.S.G. § 4B1.1(b)(1); U.S.S.G. ch. 5, pt. A (Sentencing Table) (OL 37/CHC VI).

But none of this mattered due to the government's election to file the § 851 notices. The statutory mandatory term of life imprisonment

8

triggered by the § 851 notices trumped the guideline calculations and required the court to impose a term of mandatory life in prison, regardless. (Marshane PSR ¶ 72; Terry PSR ¶ 84.) On February 23, 2005, the district court sentenced both Marshane and Terry to life in prison. (Marshane Judgment, R. 117; Terry Judgment, R. 118.)

The brothers appealed, and this Court affirmed. *United States v. Woods*, 187 F. App'x 524 (6th Cir. 2006).

2.   *The Fair Sentencing Act of 2010 and subsequent retroactive amendments to the drug offense levels.* Four years later, on August 3, 2010, Congress enacted the Fair Sentencing Act of 2010. *See* Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). The Fair Sentencing Act modified the statutory penalties for crack offenses in light of the longstanding and widespread recognition that the 100:1 powder-to-crack quantity ratio underlying the statutory ranges for crack cocaine under the Anti-Drug Abuse Act of 1986 resulted in penalties that were far too harsh and had a disparate impact on African-Americans. *See Kimbrough v. United States*, 552 U.S. 85, 97-99 (2007); *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). Section 2 of the Act increased the amount of crack necessary to support the statutory ranges for convictions under

§ 841(b)(1)(A) from 50 grams to 280 grams, and for convictions under § 841(b)(1)(B) from 5 grams to 28 grams. *See* Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). These changes effectively reduced the 100:1 statutory powder-to-crack ratio to 18:1.

As passed, the Act's changed penalty triggers did not apply retroactively to those sentenced before the Act's passage. *Dorsey*, 567 U.S. at 281. Had they applied retroactively, the brothers' penalty range (at least insofar that it was for an offense involving 50 grams or more of crack) would have been five to forty years under 21 U.S.C. § 841(b)(1)(B), enhanced by the § 851 notice to 10 years to life. But under the pre-Act's statutory 100:1 powder-to-crack ratio, and also due to the quantity of powder cocaine charged (five kilograms), their statutory penalty range remained mandatory life.

Meanwhile, the U.S. Sentencing Commission retroactively amended the base offense levels in the drug guideline at U.S.S.G. § 2D1.1 to reflect the new 18:1 powder-to-crack ratio. *See* U.S.S.G. § 2D1.1(c) (Supp. 2010). Three years later, in 2014, the Commission promulgated and made retroactive Amendment 782, commonly referred to as "drugs minus two," which further reduced offense levels for both crack and

10

powder offenses. U.S.S.G. App. C, amend. 782 (2014). As a result of these retroactive guideline changes, Marshane and Terry's base offense level for the 2.19 kilograms of crack, 33.6 kilograms of powder, and 4.5 kilograms of marijuana has gone down to 34, so with the two-level firearm enhancement their total offense level under § 2D1.1 is 36. U.S.S.G. § 2D1.1(c)(3) & cmt. (n.8(D)) (2014).[3]

Though still subject to statutory trumping due to the § 851 notices, these retroactive amendments altered both brothers' underlying guideline calculations. For Terry, the guideline range if calculated under § 2D1.1 (and assuming no other changes) went down from 360 months to life to 324 to 405 months (OL 36/CHC VI). For Marshane, the guideline range if calculated under § 2D1.1 went down from 360 months to life to

---

[3] With the 18:1 ratio now embodied in the Drug Quantity Table at § 2D1.1, the 2.19 kilograms of crack are now treated as 7,840.24 kilograms of "converted drug weight" (formerly referred to as "marijuana equivalent"). *See* U.S.S.G. § 2D1.1 cmt. (n.8(D)) (instructing that 1 gram of crack equals 3,571 grams of converted drug weight). The 33.6 kilograms of powder cocaine are still multiplied by 200 for a converted drug weight of 6,724.20 kilograms, and the marijuana is still multiplied by 1 for a converted drug weight of 4.47 kilograms. Adding the converted drug weights together yields a total weight of 14,568.91 kilograms of converted drug weight, which corresponds to base offense level 34. (*See* Gov't Response, R. 261, PageID #878 (reaching same weight calculation and conclusion).)

292 to 365 months. (OL 36/CHC V). Their career-offender offense level remained 37 under § 4B1.1, however, because it was still based on the unchanged statutory maximum of life, and still corresponded to a guideline range of 360 months to life. *See* U.S.S.G. § 4B1.1(b)(1).

### 3. *The 2017 sentence commutations*

In large part because the Fair Sentencing Act did not retroactively benefit those whose sentences were driven by the crack-powder disparity built into the statutory ranges, such as career offenders and those serving mandatory life sentences due to § 851 notices, stakeholders and public interest groups launched Clemency Project 2014.[4] In January 2017, President Obama commuted the brothers' sentences to 360 months. (Amended Judgment, Doc. 203, PageID #459; Amended Judgment, Doc.

---

[4] *See* U.S. Dep't of Justice, *Remarks as Prepared for Delivery by Deputy Attorney General James M. Cole at the Press Conference Announcing the Clemency Initiative*, Wash. D.C. (Apr. 23, 2014), *available at* https://www.justice.gov/opa/speech/remarks-prepared-delivery-deputy-attorney-general-james-m-cole-press-conference; U.S. Dep't of Justice, Press Release 14-419, *Announcing New Clemency Initiative, Deputy Attorney General James M. Cole Details Broad New Criteria for Applicants* (Apr. 23, 2014), *available at* https://www.justice.gov/opa/pr/announcing-new-clemency-initiative-deputy-attorney-general-james-m-cole-details-broad-new.

204, PageID #465.) These sentences correspond to the bottom of the career offender range.

## B. The 2020 motion for a reduction under section 404 of the First Step Act of 2018.

Approximately two years later, Congress passed the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194 (2018) (codified at 21 U.S.C. § 841 note) ("FSA"). With its passage, Congress opened the door for the district court to take a fresh look at Marshane and Terry's 30-year sentences, unrestricted by existing limits governing retroactive guideline amendments under § 3582(c)(2) and U.S.S.G. § 1B1.10. *See United States v. Alexander*, 951 F.3d 706, 708 (6th Cir. 2019); *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019). With the FSA, Congress made retroactive the *statutory* changes made by section 2 of the Fair Sentencing Act of 2010, and the process for considering and deciding motions brought pursuant to the Act is more like an original sentencing, though not plenary.

Under section 404 of the First Step Act, a person is eligible for retroactive application of the Fair Sentencing Act, and a sentence reduction, if he was sentenced for a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3

13

of the Fair Sentencing Act of 2010 [] that was committed before August 3, 2010." FSA § 404(a); *id.* § 404(b). While courts are not required to reduce any sentence pursuant to section 404, they may deny a motion only "after a complete review of the motion on the merits," considering the defendant's retroactively amended guideline range and after "a thorough renewed consideration of the § 3553(a) factors," which includes discretionary consideration of intervening changes in the law not made retroactive. FSA § 404(c); *United States v. Boulding*, 960 F.3d 774, 782-84 (6th Cir. 2020); *United States v. Maxwell*, 991 F.3d 685, 691-95 (6th Cir. 2021), *petition for cert. filed*, S. Ct. No. 20-1653 (May 24, 2021). On appeal, this Court reviews the new sentence imposed (or the old sentence left intact) for procedural and substantive reasonableness, just like an original sentence. *Boulding*, 960 F.3d at 783.

After an flurry of *pro se* filings, Marshane and Terry each filed in July 2020 a counseled supplemental motion for a sentence reduction under section 404. (Marshane Supp. 404 Motion, R. 231, PageID #581-94; Terry Supp. 404 Motion, R. 232, PageID #595-608.) In addition to establishing that they were convicted of a "covered offense" because the crack component of their offense is now penalized by a statutory range of

ten years to life (down from mandatory life), the brothers asked the court to consider that the U.S. Sentencing Commission reported to Congress in 2016 that individuals deemed career offenders based on drug-trafficking offenses, like Marshane and Terry, should not be treated as career offenders at all.[5] For this reason and also in light of their post-sentencing rehabilitation, they asked the district court to impose a sentence below the 360-to-life career-offender range. (*Ibid.*)

The government opposed any reduction. It first argued that because their offense also involved five kilograms or more of powder cocaine, they were ineligible for a reduction because the statutory range for that offense was not modified. (*See* Gov't Response, R. 260, PageID #866-67.) The government further argued that even if they were eligible, no reduction is warranted in light of the § 3553(a) factors. It agreed that the drug quantity for which they were held responsible corresponds today to a lowered base offense level 34 under § 2D1.1, which with the 2-level gun

---

[5] *See* U.S. Sent'g Comm'n, *Report to the Congress: Career Offender Sentencing Enhancements* 43-45 (2016) (recommending that the directive at 28 U.S.C. § 994(h) be amended to remove drug-trafficking-only offenders from the coverage of the career offender guideline because the ordinary operation of the criminal history rules already account for their risk of reoffending and because judges already sentence such offenders within the ordinary drug range in the large majority of cases).

bump corresponds to offense level 36. (*Id.* at PageID #868 n.2.) But it pointed out that even if the Fair Sentencing Act had been in effect at the time of sentencing, the career-offender base offense level under § 4B1.1 would still have been 37 (resulting in a range of 360 months to life), and in any event a reduction below the career-offender sentence as already commuted by President Obama "would seem to offend" the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). (*Id.* at PageID #868, 869.)

On July 22, 2021, the district court granted each brother a reduction. In separate written memoranda, the court first agreed that they are eligible for a reduction, citing *United States v. Walker*, No. 20-1555, 2021 U.S. App. LEXIS 11681, at *3 (6th Cir. Apr. 20, 2021) (holding, with the government's agreement, that district court has authority to reduce powder sentence for eligible crack offender), and determined that their conviction insofar as it involves crack is now treated as a violation of § 841(b)(1)(B), not § 841(b)(1)(A). (*See* Marshane Mem. & Order, R. 262, PageID# 887-88; Terry Mem. and Order, R. 264, PageID #898.) The court next determined that their applicable guideline range is 360 months to life, "based on a Career Offender total offense

level of 37 and a criminal history category of VI." (Marshane, R. 262, PageID #888; Terry, R. 264, PageID #898) At the same time, the court recognized that their non-career-offender ranges under § 2D1.1 were retroactively lowered to 36, so are now lower than the career offender range—down to 292 to 365 months for Marshane (in CHC V) and down to 324 to 405 months for Terry (in CHC VI). (Marshane, R. 262, PageID #889; Terry, R. 264, PageID #899.)

Using the career offender range as the benchmark, the court then varied one offense level down from the bottom of the career offender range for both brothers (to offense level 36), to a range of 324 to 405 months. (*Ibid.*) *See* U.S.S.G. ch. 5, pt. A (Sentencing Table) (OL 36/CHC VI). In Marshane's case, the court further varied downward by eighteen months, which reduced his sentence to 306 months, in consideration of his "exceptional" post-sentencing conduct. (Marshane, R. 262, PageID #889-90 (noting that Marshane has "incurred no disciplinary sanctions in his more than 16 years in custody," has earned his GED and completed various programming, and is classified as minimum security).) The court reduced Terry's sentence to 324 months, noting that his "post-sentencing conduct has, on balance, been positive." (Terry, R. 264, PageID #899-90

17

(noting that Terry has earned his GED, has completed educational programming, and is classified as low security).) The court reduced both brothers' terms of supervised release from ten years to eight. (Marshane R. 262, PageID #891; Terry R. 264, PageID #901.)

Marshane's notice of appeal was docketed on August 2, 2021, and Terry's was docketed on August 4, 2021. (Notice of Appeal, R. 266, PageID #904; Notice of Appeal, R. 269, PageID #909.) On November 9, 2021, this Court consolidated the appeals for briefing and submission. (R. 274, PageID #921.)

18

## SUMMARY OF THE ARGUMENT

The district court  procedurally erred when it treated Marshane and Terry Woods as career offenders for purposes of calculating their amended guideline range. Under this Court's corrective interpretation of the definition of "controlled substance offense" in U.S.S.G. § 4B1.2, in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), the brothers' conspiracy conviction under 21 U.S.C. § 846 is not a career offender predicate. Further, as a case of statutory construction applying a 1993 Supreme Court decision, *Havis* is retroactive and should apply as part of the amended guideline calculation.  Section 404 is a freestanding exception to finality, not subject to the procedural hurdles present in other mechanisms for post-conviction relief.  In a section 404 proceeding, the court is to apply intervening changes in the law that are retroactive.

Even if the district court was not required to apply *Havis* as part of the amended guideline calculation, remand is nevertheless appropriate because the district court was unaware that the brothers are not career offenders under current law, and also was not aware of another guideline amendment that lowers Terry Woods' Criminal History Category. Given that the district court plainly meant to anchor its § 3553(a) analysis in

view of their correct non-career offender ranges, the Woods' brothers should be given the opportunity for the district court to engage in that analysis while correctly informed.

Finally, and in any event, remand is appropriate so that the district court may reconsider the brothers' motions in light of the Department of Justice's recently announced position in strong support of equalizing the penalties for crack and powder cocaine, and retroactively so. Under the government's view, their non-career-offender ranges would be even lower—a strong basis for a further downward variance. Because the brothers did not have the chance to have their motions considered in light of the government's position, remand is appropriate.

## STANDARD OF REVIEW

This Court reviews "for reasonableness a new sentence that the district court imposes after its grant of a First Step Act motion to reduce sentence." *United States v. Foreman*, 958 F.3d 506, 515 (6th Cir. 2020); *United States v. Smithers*, 960 F.3d 339, 343 (6th Cir. 2020). "Like all sentences imposed by the district court, the resentencing decision under the First Step Act must not only be procedurally reasonable but substantively reasonable." *United States v. Boulding*, 960 F.3d 774, 783 (6th Cir. 2020).

In reviewing a sentence for procedural error, this Court reviews whether the district court has accurately calculated the amended guideline range at the time of the resentencing, and has engaged in a "thorough renewed consideration of the § 3553(a) factors." *Id.* at 784. This Court further reviews whether the district court adequately explained its decision in light of the sentencing purposes and factors under 18 U.S.C. § 3553(a) (including an explanation for any deviation from the Guidelines range), the latter of which "allow[s] for meaningful appellate review and [] promote[s] the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50, 51 (2007); *Chavez-Meza v. United States*, 138 S. Ct. 1959,

1964 (2018); *cf. United States v. Jones,* 980 F.3d 1098, 1114 (6th Cir. 2020).

## ARGUMENT

**The District Court Miscalculated the Amended Guideline Range While Lacking the Benefit of the Government's Current Position Regarding Crack Penalties.**

*Overview.* The district court's task in assessing a First Step Act motion for an eligible defendant is governed by a special provision: It must engage in "a complete review of the motion on the merits." FSA § 404(c). This requirement "indicat[es] that Congress contemplated close review of resentencing motions." *Boulding*, 960 F.3d at 784. "[A]t a minimum," the court's consideration of the merits of a First Step Act motion "includes an accurate calculation of the amended guideline range at the time of resentencing and thorough renewed consideration of the 3553(a) factors," including post-sentencing conduct. *Id.* "While 'complete review' does not authorize plenary resentencing, a resentencing predicated on an erroneous or expired guideline calculation would seemingly run afoul of Congressional expectations." *Id.* at 784. The amended guideline range therefore includes at the very least any changes that apply retroactively, and the district court may also consider as part

22

of its § 3553(a) analysis any non-retroactive changes in the law that would apply if the defendant were sentenced today, as well as any other pertinent change. *United States v. Maxwell,* 991 F.3d 685, 691-94 (6th Cir. 2021), *petition for cert. filed*, S. Ct. No. 20-1653 (May 24, 2021); *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021) (implicitly confirming that retroactive changes are included in the amended guideline calculation in section 404 proceedings). In at least one case, too, this Court remanded for further proceedings because the district court plainly erred when it failed to apply a non-retroactive guideline amendment in its calculation of the amended range, and even when counsel invited the error. *See United States v. Montgomery*, 998 F.3d 693, 699-700 (6th Cir. 2021).

Ensuring this complete, close, and renewed review of all relevant information, both with respect to the correct guideline calculation and the § 3553(a) analysis is crucial to Marshane and Terry Woods, as their First Step Act motions are their "one bite at the apple" in light of prevailing norms and under the more expansive rules governing section 404 motions. *United States v. Maxwell*, 800 F. App'x 373, 376 (6th Cir. 2020). For the reasons that follow, they ask the Court to remand their

23

case for further consideration using the correct guideline calculation and in light of Department of Justice's recently announced support of eliminating the unjustified disparity between the penalties for crack and powder cocaine.

### A. Marshane and Terry are not career offenders.

The district court plainly erred when it treated Marshane and Terry as career offenders in calculating the amended guideline range. A new case of statutory construction decided since their original sentencing, *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), has revealed that their conspiracy conviction under § 846 is not (and never should have been) a career offender predicate. As a result, and with no obstacle under section 404 to applying *Havis* retroactively, the brothers' amended guideline ranges are the lower ranges calculated under § 2D1.1.

1. For the career offender guideline to apply, the instant and prior predicate offenses must each be either a "controlled substance offence" or a "crime of violence" as defined in § 4B1.2. *See* U.S.S.G. § 4B1.1(a), with those terms being defined at § 4B1.2. At the time the brothers were originally sentenced, a conspiracy conviction under 21 U.S.C. § 846 was treated as a predicate "controlled substance offense"

24

under § 4B1.2(b), based not on the guideline's text but on its commentary in Application Note 1 adding conspiracy to the list of completed offenses. *United States v. Williams*, 53 F.3d 769, 771 (6th Cir. 1995); *see also United States v. Evans*, 699 F.3d 858, 867 (6th Cir. 2012) (same for attempt). In 2019, however, this Court corrected that mistake. In an en banc decision, the Court in *Havis* recognized that the guideline's text defining the term "controlled substance offense" lists only completed offenses. *Havis*, 927 F.3d at 385, 386. Applying the Supreme Court's 1993 decision in *Stinson v. United States*, 508 U.S. 36 (1993), the Court held that the commentary in Application Note 1 to § 4B1.2 is invalid insofar as it purports to expand the guideline text beyond its unambiguous meaning. *Id.* at 387. Following *Havis*, the Court recognized that a conspiracy to commit a controlled substance offense also does not qualify as a "controlled substance offense. *United States v. Cordero*, 973 F.3d 603, 626 (6th Cir. 2020).

   2.    The district court should have applied *Havis* when calculating the brothers' amended guideline range in this section 404 proceeding. *Havis* is a case of statutory interpretation applying the Supreme Court's existing rule in *Stinson*, so it is retroactive in the sense that it merely

describes what the law is and always was. *Cf. Rivers v. Roadway Express*, 511 U.S. 298, 312-13 & n.12 (1994) (when construing a statute, the Court "is explaining its understanding of what the statute has meant continuously since the date when it became law"); *see United States v. Tate*, 999 F.3d 374 (6th Cir. 2021) (rules of statutory construction apply to interpretation of guideline terms). As the Supreme Court explained in *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008), a new statutory construction is always "retroactive" in the sense that it describes what the statute always meant. *Id.* at 271.

*Havis* is also retroactive in the sense that it applied *Stinson*'s "old and essential rule" governing the Sentencing Commission's congressionally-delegated authority to interpret guideline text, so was dictated by precedent. *Cf. McCormick v. Butler*, 977 F.3d 521, 526 (6th Cir. 2020) (explaining that *Mathis v. United States*, 136 S. Ct. 2243 (2016), a rule of statutory construction, "is retroactive" because it applied *Taylor*'s "old and essential rule" about the categorical approach). Whether a person may obtain relief from having been erroneously subject to an earlier, wrong interpretation is a distinct matter, and depends on rules of finality and their exceptions. *Danforth*, 552 U.S. at 271.

Section 404 of the First Step Act is just such an exception to finality. It is freestanding, not subject to the restrictive rules that govern retroactive guideline amendments, *Beamus*, 943 F.3d at 792, or the rules that govern other avenues to relief, such as 28 U.S.C. § 2255 or § 2241.[6] Rather, the question whether the district court must apply *Havis* when calculating the amended guideline range in a section 404 proceeding is governed by section 404 itself, and the cases interpreting it.

In *Boulding*, this Court held that that "at a minimum," the court's consideration of the merits of a First Step Act motion "includes an accurate calculation of the amended guideline range at the time of resentencing." 960 F.3d at 784. This simple language might seem to mean

---

[6] For this reason, cases holding that *Havis* cannot form the basis of relief by way of a first or second § 2255, or by way of § 2241, do not control. Each avenue has its own procedural hurdles, and each must be met on their own terms. *E.g.*, *Bullard v. United States*, 937 F.3d 654, 657 (6th Cir. 2019) (*Havis* provides no avenue for relief in a first § 2255 motion because a non-constitutional challenge to an advisory guideline range is not cognizable in first § 2255); *In re Benson*, No. 20-1640, 2021 U.S. App. LEXIS 3755 (6th Cir. Feb. 10, 2021) (holding that, because *Havis* is not a "new rule of constitutional law" and has not been "made retroactive to cases on collateral review by the Supreme Court," as required to meet § 2255(h)(2), it provides no avenue for relief for a person raising a second or successive § 2255 motion); *Brown v. Owens*, No. 20-5510, 2021 U.S. App. LEXIS 14095, at *5 (6th Cir. May 12, 2021) (*Havis* provides no avenue for relief by way of § 2241 because it is not a Supreme Court decision) (citing *Hueso v Barnhart*, 948 F.3d 324, 332-33 (6th Cir. 2020)).

27

that the court *must* consider the guideline range under current law. However, later in *Maxwell*, this Court explained that the process is not as simple as it sounds, but rather is limited by the First Step Act itself. As further explained in *Maxwell*, the First Step Act "asks the court to sentence [the defendant] 'as if' the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act of 2010, *not as if other changes had been made to sentencing law in the intervening years*." 991 F.3d at 689 (emphasis added). Rather, "there is no requirement at the outset to account for intervening legal developments in recalculating the guidelines." *Id.* at 690.[7]

For Maxwell, this interpretation meant he was not entitled to a new guideline calculation that accounted for subsequent changes in the law, and under which he is not a career offender. *Id.* at 689.[8] Even so, *Maxwell* allowed that those intervening changes in the law were not entirely off-

[7] In *Maxwell*, the court was answering the question whether "the First Step Act demand[s] a plenary resentencing of a defendant that accounts for all changes in the law since his original sentence." *Maxwell*, 991 F.3d at 688-89.

[8] The Court did not identify the intervening changes in the law at issue there.

28

limits, holding that the district court may consider intervening changes in the law as part of the § 3553(a) analysis in deciding whether and to what extent to reduce his sentence. *Id.* at 691.

Not long after *Maxwell* was decided, Chief Judge Sutton (who wrote the opinion in *Maxwell*) explained that *Maxwell* means only that *non-retroactive* changes in the law are off-limits for calculating the amended guideline range. *See United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021) (describing *Maxwell*).[9] As the Court in *Jarvis* explained, *Maxwell* held that the district court "could not rely on a *non-retroactive* sentencing law change in calculating the guidelines sentencing range, but it could consider that change in selecting an appropriate sentence under the § 3553(a) factors." *Id.* (emphasis added).[10]

---

[9] The Court again did not identify the change in law at issue in *Maxwell*.

[10] The Court has not always adhered even to that limit. After *Maxwell*, the Court vacated, in a published decision, a new sentence imposed in a First Step Act case because the district committed reversible error when it did not calculate the current amended range to include an intervening guideline amendment (the elimination of "recency" points) that is *not* retroactive. *United States v. Montgomery*, 998 F.3d 693, 700-01 (6th Cir. 2021); *see* U.S.S.G. App. C, amend. 742 (2010). There, the court said that "[in] reviewing Montgomery's motion, the district court had to re-calculate Montgomery's Guidelines range to ensure that it sentenced him under the Guidelines *as they existed at the time of resentencing*." *Id.* (emphasis added). Notably, in holding that this was a guideline

In short, under *Boulding*, *Maxwell*, and *Jarvis*, the district court should have applied the retroactive interpretation in *Havis* to determine the "accurate calculation of the amended guideline range at the time of resentencing." *Boulding*, 960 F.3d at 784.[11] Under *Havis*'s explication of what the guideline text at § 4B1.2(b) always meant, the brothers' amended guideline range is not the 360-to-life career offender range, but their ranges as calculated under the drug guideline at § 2D1.1.

The district court therefore erred when it deemed the brothers to be career offenders, and the error is plain. *Montgomery*, 998 F.3d at 700-01 (holding that error in calculating the amended guideline range in section 404 proceeding is plain error, just as at an original sentencing) (relying on *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1344 (2016), and

---

calculation error requiring reversal, the Court in *Montgomery* cited *Boulding*. *Id.*

[11] Applying a corrective judicial guideline interpretation retroactively is also consistent with the fact that clarifying guideline amendments are applied retroactively, which can change the law in a circuit but merely describe what the guideline always meant. *See, e.g.*, *United States v. Jackson*, 901 F.3d 706, 709 (6th Cir. 2018) (explaining that a clarifying guideline amendment, because it tells us what the guideline already meant, applies retroactively even when the court must use the same Manual used at the original sentencing); U.S.S.G. § 1B1.11(b)(2) (clarifying amendments are to be applied retroactively).

*Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905-06 (2018)). This is so even though counsel below invited the error when he told the district court in his briefing that the brothers "remain[] in the career offender guideline," (Terry Supp. 404 Motion, R. 232, PageID #602), and even though their reduced sentences fall within their non-career offender ranges. *Id.* at 699-700. As this Court put it in *Montgomery*, "[i]t is difficult to see how the interests of justice would be served by requiring Montgomery to linger longer in prison because no one in the district court, the court itself included, noticed that the way we calculate a defendant's Criminal History Category had changed between his two sentencings." *Id.* at 700. Just as in *Montgomery*, the interests of justice can only be served by a remand for reconsideration using the non-career-offender range as the correct starting point for its § 3553(a) analysis.

3.    Alternatively, assuming (without conceding) that the district court was not required to apply *Havis* as part of the calculation of the amended guideline range, the district court's § 3553(a) analysis was fatally flawed because it was expressly anchored by Marshane and Terry's career offender classification under § 4B1.1, without awareness that they would not be so classified today. A change in the guideline

range, even when not retroactive, is a highly relevant consideration under § 3553(a). As this Court said in *Boulding*, a "resentencing predicated on an erroneous or expired guideline calculation would seemingly run afoul of Congressional expectations." *Id.* at 784. A change in career-offender classification is also relevant because it aids the court in considering the need to avoid unwarranted sentencing disparities with similarly situated offenders. *Maxwell*, 991 F.3d 693-93. Had it known that the Woods' brothers are not career offenders under current law at all, and that the vast majority of crack and powder offenders today are sentenced within or below the applicable drug range under § 2D1.1,[12] it might have weighed the § 3553(a) factors differently to impose a sentence at or below the bottom of the drug range under § 2D1.1. Without the correct information in mind, the court lacked important information relevant to the § 3553(a) analysis.

If only to give the district court the opportunity to consider the § 3553(a) factors while cognizant of the Woods brothers' actual guideline range under current law, remand is appropriate.

---

[12] *See* U.S. Sent'g Comm'n, *Sourcebook of Federal Sentencing Statistics* tbl. D-14 (2020).

4.     Finally, while it is the Woods brothers' position that *Boulding* and *Maxwell* required the district court to apply *Havis* in calculating the amended guideline range, they note that *Maxwell* may ultimately be abrogated by the Supreme Court. On September 30, 2021, the Supreme Court granted *certiorari* in *Concepcion v. United States*, No. 20-1650, to answer the question whether a district court "must or may" consider intervening changes in the law in a section 404 proceeding. This is the same question that Maxwell raised in his petition for *certiorari*, which is being held pending the resolution of *Concepcion*. *Maxwell v. United States*, No. 20-1653 (petition for cert. filed May 4, 2021). Given the breadth of the question presented, the Supreme Court could hold that that district courts are required to consider all intervening changes in the law, whether retroactive or non-retroactive. It could also hold that the district court are required to consider only retroactive changes.  Or it could hold that they are not required to consider intervening changes, but may do so in the exercise of their discretion.

For all the reasons stated here, under any scenario and without waiting for *Concepcion* to be decided, the Woods brothers' cases should be remanded for reconsideration.

**B.    The district court plainly erred in calculating Terry Woods' non-career offender range.**

There was another relevant guideline amendment missed below, this one in Terry's case only and related to a 2007 guideline amendment changing the way that multiple prior sentences are counted for criminal history purposes. Under this amendment, Terry's criminal history points place him in Criminal History Category V, not VI. This change was overlooked likely because everyone believed (mistakenly) that he is a career offender, which automatically placed him in CHC VI, so a reduction in his true category would not have affected the career offender range. But now that it is clear that Terry is not a career offender, the amendment matters.

As described above, Marshane and Terry were both convicted of a several North Carolina offenses in 1986, when they were 17 and 18 years old, respectively. In Marshane's PSR, seven convictions (most with distinct docket numbers) are listed in paragraph 34, with a date of arrest of May 22, 1986 and date of imposition of sentence of October 1, 1986. (Marshane PSR ¶ 34.) For all seven convictions, he received three criminal history points. (*Id.*) This is consistent with the "related cases" rule that applied under the 2004 Guideline Manual used at the original

sentencing. (PSR ¶ 22.) Under that rule, which multiple convictions were treated as "related case" (so counted as just one prior sentence) if they were consolidated for trial or sentencing and there was no intervening arrest. U.S.S.G. § 4A1.2(a)(2) & cmt. (n.3) (2004).

In Terry's PSR, however, his (larger) collection of 1986 convictions was set out in five separate paragraphs. (Terry PSR ¶¶ 34, 35, 36, 37, 38.) Within each paragraph, the convictions had different docket numbers, but were consolidated for judgment. (*Ibid.*) The convictions in paragraphs 37 and 38 were also consolidated with each other. (*Id.* ¶¶ 37, 38.) The result is that these five paragraphs of 1986 convictions were counted as yielding four separate prior sentences assigned three points each, for a total of twelve criminal history points.  (Terry PSR ¶¶ 34 (3 points), 35 (3 points), 36 (3 points), 37 (0 points), 38 (3 points).)  This, too, was consistent with the prevailing "related cases" rule in 2004, by which sentences could be treated as "related" only if consolidated for trial or sentencing, or resulted from offenses that occurred on the same occasion or were part of a single common scheme or plan. U.S.S.G. § 4A1.2(a)(2) cmt. (n.3) (2004).

35

In 2007, two years after the Woods' brothers were sentenced, the "related cases" rule was replaced with a new "single sentence" rule, which remains in place today. Under that rule, multiple prior sentences are treated as a "single sentence" if (1) "there is no intervening arrest," and (2) either "(A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." U.S.S.G. § 4A1.2(a)(2).

In Terry's case, the PSR shows that the date of arrest was the same for each conviction (May 19, 1986), and that the date of imposition of sentence was also the same for each and the same as Marshane's (October 1, 1986). (*See* Terry PSR ¶¶ 34, 35, 36, 37, 38.) Under § 4A1.2(a)(2) as amended, Terry would be assigned just 3 points for all of these convictions, not twelve. This would reduce his criminal history score from 19 to 10, which would in turn lower his Criminal History Category from VI to V. As a result, his non-career-offender range today would be the same as Marshane's: 292 to 324 months. (R. 262, PageID #889 (OL 34/CHC V).)

Though the Commission did not make this change retroactive, this Court in *Montgomery* (decided after *Maxwell*) held that a district court's

failure to apply a different non-retroactive change to the criminal history rules (the elimination of recency points) constituted plain error requiring remand, even though the defendant invited the error. *Montgomery*, 998 F.3d at 700-01. The same should happen here.

Even if the Court concludes that this calculation error is relevant only to the § 3553(a) analysis, it is similar to (and compounds) the *Havis* error as it relates to the district court's exercise of its discretion. The district court clearly *meant* to consider the correct non-career offender range under the 2018 Manual. Had it recognized that Terry is not actually a career offender under current law, and further that his non-career-offender range is 292 to 324 months, not 324 to 405 months, it might have varied downward further than it did.

### C. The government's current support for a 1:1 ratio would have materially affected the § 3553(a) analysis.

One other piece of crucial information relevant to the § 3553(a) analysis was missing in the district court: The Department of Justice's current support for eliminating the unwarranted disparity between crack and powder penalties, which remains reflected in the 18:1 powder-to-crack ratio. Though this information would not have required the district

court to vary downward to match the powder range, or vary at all, it is so important that it counsels a remand here, especially when the district court also did not realize the brothers are not career offenders under *Havis* and did not realize that Terry's Criminal History Category today would be V, not VI.

1. Congress is presently considering whether to eliminate the sentencing disparity between crack and powder cocaine by deleting § 841(b)(1)(A)(iii) and (b)(1)(B)(iii), which would effectively institute a 1:1 ratio between crack and powder cocaine. In the House, the "Eliminating a Quantifiably Unjust Application of the Law Act," also known as the "EQUAL Act," is designed "[t]o eliminate the disparity in sentencing for cocaine offenses" and make the change retroactive. H.R. 1693, 117th Cong., 1st Sess. (2021-2022). The bill was introduced on March 9, 2021 and has 56 co-sponsors. It was reported out of the House Judiciary Committee on July 21, 2021, and passed the House on September 28, 2021. *See generally* H.R. 1693, 117th Congress (2021-2022): EQUAL Act of 2021 – www.Congress.gov—Library of Congress (last visited Nov. 30, 2021). In the Senate, the bill has 9 co-sponsors. *See* S. 79, 117th Congress: EQUAL Act of 2021.

2.    On June 22, 2021—four months after the government filed its opposition to the Woods brothers' motions but before the district court ruled on them—the Department of Justice submitted written testimony to the Senate Judiciary Committee in support of the Senate version of the EQUAL Act, S. 79. *See* Dep't of Justice, *Statement Before the S. Jud. Comm. Hearing on Examining Federal Sentencing for Crack and Powder Cocaine* (June 22, 2021).[13] Among other things, the Department set forth its strong view that effective criminal and sentencing law is "data-driven"; that a 1:1 ratio is appropriate for purposes of setting the quantity triggers; and that there are better ways than the categorical 18:1 ratio to capture a given crack offender's relative culpabilities, such as accounting for aggravators like the presence of firearms, violence, a leadership role, recruiting young people, and injury or death. *See generally id.*[14]

In its statement to Congress, the Department declared that it "strongly supports the legislation, for we believe it is long past time to

---

[13] *Available at* http://cdn.cnn.com/cnn/2021/images/06/22/equal.act.testimony-.final.pdf.

[14] In the Woods brothers' case, for example, the presence of a firearm was separately accounted for as a specific offense characteristic. (Marshane PSR ¶ 24; Terry PSR ¶ 24.)

39

end the disparity in sentencing policy between federal offenses involving crack cocaine and those involving powder cocaine." *Id.* at 1. According to the Department, "[t]he disparity in federal cocaine sentencing policy has been the most visible symbol of racial unfairness in the federal criminal justice system for almost 35 years, and it is time to eliminate it." *Id.* at 2. Furthermore, the Department supports making the 1:1 ratio retroactively applicable (with relief being left to a sentencing court's discretion), "because it is the right thing to do, . . . because evidence shows that previous instances of retroactive penalty reductions did not impact public safety[,]" and because "[a]pplying the changes retroactively will ensure that no crack cocaine offender will serve a sentence greater than necessary." *Id.* at 8.

Last month, on October 27, 2021, Attorney General Merrick Garland testified before the Senate Judiciary Committee, again in full support of equalizing the penalties for crack and powder cocaine:

> [T]he Justice Department supports [the] equal treatment of crack and powder cocaine. The Sentencing Commission has over the last decade, maybe more than that, produced a series of reports which undercut, but was supposed to be the scientific basis for, the distinction between the two, and it's made quite clear that there is no . . . basis for distinguishing between the two. So once that is undercut, there's going to be no grounds for that. On the other side, not only are there no

grounds for it, it clearly does have a disparate impact on communities of color, also clearly recognized by the Sentencing Commission statistics. You have that kind of circumstances. There's no justification for this, and we should end this.

*Hearing on Oversight of the Dep't of Justice*, S. Jud. Comm., 117th Cong. 1st Sess. (Oct. 27, 2021) (Merrick Garland) (2:21:04-55), *available at* https://www.judiciary.senate.gov/meetings/10/20/2021/oversight-of-the-department-of-justice. The Attorney General further recognized that "equalizing penalties for crack and powder should have no difference with respect to our ability to fight violent crime." *Id.* at 2:22:36

3.    The EQUAL Act is not yet law, and may never become law. Nonetheless, the government has proactively taken the express position in other cases in this Circuit, before district courts at initial sentencings, that its support of a 1:1 ratio is a relevant basis for a policy-based downward variance. In the Western District of Michigan, for example, the government has filed sentencing memoranda advising the district court of the government's support of the EQUAL Act and of the court's ability to consider the proposed 1:1 ratio as a basis to vary from the advisory guideline range. *See, e.g.*, Government's Supplemental Sentencing Memorandum, *United States v. Jefferson*, No. 1:21-cr-035,

ECF No. 51 (W.D. Mich. Aug. 6, 2021); Government's Sentencing Memorandum, *United States v. White*, No. 1:20-cr-044, ECF No. 50, at 5 (W.D. Mich. Aug. 20, 2021).

For the Woods brothers, the government's official position is material because the EQUAL Act would further lower their non-career-offender range under § 2D1.1. Treating the 2.19 kilograms of crack the same as powder would yield a total 35.8 kilograms of powder cocaine (2,195 g + 33,621 g = 35,816.53 g), which is treated as 7,163.30 kilograms of converted drug weight. U.S.S.G. § 2D1.1 cmt. (n.8) (1 gram of powder is treated as 200 grams of converted drug weight). When combined with the 4.5 kilograms of marijuana, the total converted drug weight would be 7,167.80 kilograms, which corresponds to a base offense level 32. U.S.S.G. § 2D1.1(c)(4). With the two-level gun bump, the brothers' total offense level would be 34. In Criminal History Category V, their non-career-offender guideline range under § 2D1.1 would be 262 to 327 months. Notably, under this scenario, the sentence would driven not by an unjustifiably exaggerated treatment of crack, but on the much greater amount of powder cocaine that the offense actually involved.

In light of the Justice Department's current view that a 1:1 crack-to-powder range is sufficient, the § 3553(a) landscape is in fact entirely different from what the district court believed. This Court may fairly assume that the government is of the view that when the brothers' guideline ranges are calculated under § 2D1.1—whether formally as part of the guideline calculation or as a § 3553(a) consideration—the powder range of 262 to 327 months is the appropriate guideline range, both now and retroactively. Ordinarily, a Justice Department position of this strength would be strong support for a downward variance, but the district court did not have the benefit of the government's view. At the very least, the Court should remand Marshane and Terry's cases so that the district court may consider their motions with the Justice Department's now-stated position in mind, and also cognizant that they would not be career offenders under current law.

## CONCLUSION

For the foregoing reasons, Marshane and Terry Woods ask this Court to reverse the district court's First Step Act orders and remand for further proceedings.

43

Respectfully submitted:

Federal Defender Services
  of Eastern Tennessee, Inc.

By:

_s/  Jennifer Niles Coffin_
Jennifer Niles Coffin
Assistant Federal Defender
Federal Defender Services of
  Eastern Tennessee, Inc.
800 South Gay St., Suite 2400
Knoxville, Tennessee  37929
(615) 736-5047

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief has been served upon the Appellee through operation of the Court of Appeals Electronic Filing System, and to Appellants Marshane and Terry Woods, with sufficient postage to carry the same to their destinations.

Dated this 1st day of December, 2021.

*s/  Jennifer Niles Coffin*
Assistant Federal Defender

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the requirements of the type-volume limitation of Rule 32(a)(7)(B), Federal Rules of Appellate Procedure, as it contains 8,591 words, excluding the table of contents, table of citations, statement regarding oral argument, the addendum, and the certificates of counsel. Certification is based on the word count of the word-processing system used in preparing the brief, Microsoft Word 2013.

*s/  Jennifer Niles Coffin*

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

**UNITED STATES OF AMERICA V. MARSHANE WOODS**
**UNITED STATES OF AMERICA V. TERRY WOODS**
**U.S. DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**

### No. 2:03-CR-00069

| Record Entry No. | Document | PageID # Range |
|---|---|---|
| n/a | Revised Presentence Investigation Report (Sealed) - Marshane Woods | n/a |
| n/a | Revised Presentence Investigation Report (Sealed) - Terry Woods | n/a |
| 90 | § 851 Notice - Marshane Woods | 227-228 |
| 91 | § 851 Notice - Terry Woods | 229-231 |
| 117 | Judgment - Marshane Woods | n/a |
| 118 | Judgment - Terry Woods | n/a |
| 203 | Amended Judgment - Marshane Woods | 459 |
| 204 | Amended Judgment - Terry Woods | 465 |
| 231 | Supplemental Motion for Sentence Reduction Under Section 404 of the First Step Act - Marshane Woods | 581-594 |

| 232 | Supplemental Motion for Sentence Reduction Under Section 404 of the First Step Act - Terry Woods | 595-608 |
| --- | --- | --- |
| 260 | Government's Response in Opposition to Motion to Reduce Sentence Under Section 404 - Marshane Woods | 863-872 |
| 261 | Government's Response in Opposition to Motion to Reduce Sentence Under Section 404 - Terry Woods | 873-883 |
| 262 | Memorandum Opinion and Order Granting Section 404 Reduction -Marshane Woods | 884-891 |
| 264 | Memorandum Opinion and Order Granting Section 404 Reduction - Terry Woods | 894-901 |
| 266 | Marshane Woods - Notice of Appeal | 904 |
| 269 | Terry Woods – Notice of Appeal | 909 |