**Case Nos. 21-5734, 21-5742**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**MARSHANE WOODS
and TERRY WOODS,**

**Defendants-Appellants.**

---

On appeal from the United States District Court
for the Eastern District of Tennessee

---

**BRIEF OF THE UNITED STATES**

---

Francis M. Hamilton III
United States Attorney
Eastern District of Tennessee

Debra A. Breneman
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee  37902
(865) 545-4167

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

STATEMENT REGARDING ORAL ARGUMENT...................................1

STATEMENT OF THE ISSUE ....................................................................1

STATEMENT OF THE CASE .....................................................................1

SUMMARY OF ARGUMENT ....................................................................8

ARGUMENT ..............................................................................................9

    I.    The defendants' reduced sentences are procedurally reasonable....... 11

    II.    The defendants' reduced sentences are substantively reasonable. .... 16

CONCLUSION............................................................................................ 23

CERTIFICATE OF SERVICE .................................................................... 23

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ... 24

# TABLE OF AUTHORITIES

<u>Cases</u>

*Bullard v. United States*, 937 F.3d 654 (6th Cir. 2019)......................................14

*Castro v. United States*, 540 U.S. 375 (2003)......................................13

*Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018)......................................11

*Concepcion v. United States*, 142 S. Ct. 2389 (2022)..................................*passim*

*Dorsey v. United States*, 567 U.S. 260 (2012) ......................................19

*Gall v. United States*, 552 U.S. 38 (2007) ......................................21

*Jones v. United States*, 689 F.3d 621 (6th Cir. 2012)......................................14

*Rita v. United States*, 551 U.S. 338 (2007) ......................................13, 15

*Terry v. United States*, 141 S. Ct. 1848 (2021) ......................................5

*United States v. Alexander*, 951 F.3d 706 (6th Cir. 2019) ......................................9, 13

*United States v. Allen*, 956 F.3d 355 (6th Cir. 2020)......................................9

*United States v. Bailey*, 27 F.4th 1210 (6th Cir. 2022) ......................................12

*United States v. Barber*, 966 F.3d 435 (6th Cir. 2020)......................................9, 11, 13

*United States v. Boulding*, 960 F.3d 774 (6th Cir. 2020)......................................10, 11, 15

*United States v. Brooks*, 628 F.3d 791 (6th Cir. 2011)......................................21

*United States v. Curry*, 536 F.3d 571 (6th Cir. 2008)......................................16

*United States v. Foreman*, 958 F.3d 506 (6th Cir. 2020)......................................11

*United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (*en banc*)..........13, 14, 15, 21

*United States v. Jefferson*, No. 1:21-cr-35 (W.D. Mich. Aug. 6, 2021)............... 20

*United States v. Johnson*, 26 F.4th 726 (6th Cir. 2022).................................... 10

*United States v. Johnson*, 934 F.3d 498 (6th Cir. 2019)................................... 22

*United States v. Kirchhof*, 505 F.3d 409 (6th Cir. 2007) ................................. 16

*United States v. Lynde*, 926 F.3d 275 (6th Cir. 2019) ...................................... 22

*United States v. Martin*, 817 F. App'x 180 (6th Cir. 2020).............................. 15

*United States v. Maxwell*, 991 F.3d 685 (6th Cir. 2021) ...................10, 12, 14, 20

*United States v. Mayberry*, 540 F.3d 506 (6th Cir. 2008)................................. 16

*United States v. McKinnie*, 24 F.4th 583 (6th Cir. 2022) ................................. 14

*United States v. Montgomery*, 998 F.3d 693 (6th Cir. 2021)............................. 15

*United States v. Pirosko*, 787 F.3d 358 (6th Cir. 2015)..................................... 16

*United States v. Rayyan*, 885 F.3d 436 (6th Cir. 2018) .................................... 16

*United States v. Richards*, 659 F.3d 527 (6th Cir. 2011)................................... 22

*United States v. Smith*, 958 F.3d 494 (6th Cir. 2020)..................................11, 12

*United States v. Smithers*, 960 F.3d 339 (6th Cir. 2020) ................................. 10

*United States v. Souders*, 747 F. App'x 269 (6th Cir. 2018).........................21, 22

*United States v. Thompson*, 714 F.3d 946 (6th Cir. 2013) ................................. 9

*United States v. White*, No. 1:20-cr-44 (W.D. Mich Aug 20, 2021)................. 20

*United States v. Williams*, 972 F.3d 815 (6th Cir. 2020) ................................. 15

*United States v. Woods*, 187 F. App'x 524 (6th Cir. 2006) ............................ 1, 3

<u>Statutes and Sentencing Guidelines</u>

18 U.S.C. § 3553 ........................................................................*passim*

18 U.S.C. § 3582 ............................................................................ 9

21 U.S.C. § 841 ....................................................................... 3, 4, 5, 9

21 U.S.C. § 851 .............................................................................. 2

U.S.S.G. § 4B1.2 .......................................................................... 14

U.S.S.G. § 5A ................................................................................ 4

U.S.S.G. App'x C., amend. 709 (eff. Nov. 1, 2007) ...................................... 15

U.S.S.G. App'x C., amend. 742 (eff. Nov. 1, 2010) ...................................... 15

<u>Other Authorities</u>

EQUAL Act, H.R. 1693, 117th Cong. (2021) ......................................... 18, 20

Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ....... 3, 5, 9, 10

First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) .....................*passim*

*Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity*,
   S. Hr'g 111-559, 111th Cong. 6 (Apr. 29, 2009) .............................. 18, 19

U.S. Dep't of Justice, *Statement Before the S. Jud. Comm. Hearing on Examining
   Federal Sentencing for Crack and Powder Cocaine* (June 22, 2021) ............. 20

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE ISSUE

Two brothers, defendants Terry Woods and Marshane Woods, conspired to distribute and possess with intent to distribute at least five kilograms of cocaine and 50 grams of crack cocaine. Years later, based on Section 404 of the First Step Act, the district court reduced their sentences below the career-offender guideline range that the defendants admitted was applicable to them. Did the district court properly exercise its discretion?

## STATEMENT OF THE CASE

A jury convicted Terry Woods and Marshane Woods of conspiring to distribute and possess with intent to distribute at least five kilograms of cocaine and at least 50 grams of crack cocaine between February 2001 and September 2003. *United States v. Woods*, 187 F. App'x 524, 525 (6th Cir. 2006). The evidence at trial showed that the defendants sold over 33 kilograms of powder cocaine and at least 2 kilograms of crack cocaine, plus quantities of marijuana. (*E.g.*, M. Woods Sealed Presentence Report (PSR) at ¶¶ 10, 17-18 (describing that quantity as a "very conservative estimate").) Law enforcement agents recovered crack cocaine, powder cocaine, marijuana, firearms, and cash from a home the defendants shared. *Woods*, 187 F. App'x at 526.

Each defendant was deemed responsible for a combined marijuana equivalent of 50,639 kilograms, yielding a base offense level of 38. (M. Woods PSR at ¶ 23; T. Woods Sealed Presentence Report (PSR) at ¶ 23.) A two-level firearms enhancement resulted in a total offense level of 40. (M. Woods PSR at ¶¶ 24, 31; T. Woods PSR at ¶¶ 24, 31.) Each defendant had two or more prior felony drug convictions, about which the United States had filed notice of enhanced penalties under 21 U.S.C. § 851, so he was subject to an enhanced statutory mandatory minimum of life imprisonment. (R. 90, 91, § 851 Notices, 227-31.) Each defendant was also deemed a career offender, although that classification had no effect on his base offense level or the statutory penalty.[1] (M. Woods PSR at ¶ 29; T. Woods PSR at ¶ 29.) Nor did the guideline range —360 months to life imprisonment—have any actual effect on their sentences, given the applicability of the enhanced statutory penalty. (M. Woods PSR at ¶ 72; T. Woods PSR at ¶ 84.)

As required by statute, the district court sentenced each defendant to life imprisonment, followed by ten years' supervised release, and this Court

---

[1] But for his career-offender classification, Marshane Woods would have had a criminal history category of V. (M. Woods PSR at ¶ 49.) Terry Woods, by contrast, had 19 criminal history points for a criminal history category of VI even without the career-offender classification. (T. Woods PSR at ¶ 54.)

affirmed the judgments on appeal. *Woods*, 187 F. App'x at 525. (*See also* R. 117, 118, Judgments.[2])

In 2017, each defendant received an executive grant of clemency that reduced his sentence to 360 months' imprisonment, *i.e.*, the bottom of the applicable career-offender guideline range. (R. 203, T. Woods Amended Judgment at 459; R. 204, M. Woods Amended Judgment at 465.)

In the meantime, Congress had passed the Fair Sentencing Act, which increased the quantities of crack cocaine necessary to trigger the penalties in 21 U.S.C. § 841(b)(1)(A) and (b)(1)(B). *See* Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Although that Act did not apply retroactively, Congress changed that in late 2018 when it passed the First Step Act. *See* Pub. L. No. 115-391, § 404, 132 Stat. 5194 (2018). The First Step Act permits, but does not require, a court that imposed a sentence for a "covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id.* § 404(b). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." *Id.* § 404(a).

---

[2] Although electronically available in the district court record, these documents lack PageID# references.

In 2019, each defendant invoked that provision of the First Step Act to seek a lesser sentence.  (R. 218, 219, 220, 221, Motions and Memorandums in Support, 493-542.)  In nearly-identical *pro se* pleadings, they argued that, based on the reduced statutory penalties for crack-cocaine offenses and the rule of lenity, the court should treat their multi-drug conspiracy convictions as a violation of 21 U.S.C. § 841(b)(1)(B)—*i.e.*, involving only 50 grams of crack cocaine—and disregard the 5 kilograms of powder cocaine also specifically found by the jury.  (R. 219, M. Woods Memorandum at 498; R. 221, T. Woods Memorandum at 531.)  They argued that, if sentenced anew, they would no longer be career offenders because their prior convictions were more than 15 years old.  (R. 219, M. Woods Memorandum at 499; R. 221, T. Woods Memorandum at 532.)  They also argued that their post-sentence rehabilitative efforts justified a sentence reduction.  (R. 219, M. Woods Memorandum at 499-500; R. 221, T. Woods Memorandum at 532-33.)

Aided by counsel, the defendants later filed supplemental motions stipulating that they "remain[ed] in the career offender guideline," which—rather than drug quantity—now set the guideline range.[3]  (R. 231, M. Woods Supp. Motion at 588; R. 232, T. Woods Supp. Motion at 602.)  Referencing a

---

[3] The applicable guideline range for a total offense level 37 and criminal history category VI is 360 months to life imprisonment.  *See* U.S.S.G. § 5A.

2016 Sentencing Commission study, the defendants argued that they "should no longer be treated as career offenders at all" because their prior convictions were for controlled substance offenses and because most "drug trafficking only" offenders receive sentences below the career-offender range.  (R. 231, M. Woods Supp. Motion at 589-90; R. 232, T. Woods Supp. Motion at 603-04.)  In their view, "the career offender guideline is too severe in the mine-run career offender case."  (R. 231, M. Woods Supp. Motion at 591; R. 232, T. Woods Supp. Motion at 605.)

In response, the United States emphasized that the defendants had been convicted of a multi-drug conspiracy that included at least five kilograms of powder cocaine, *i.e.*, an offense still punishable by 21 U.S.C. § 841(b)(1)(A).[4] (R. 260, 261, Responses, 863-83.)  The United States also emphasized that the defendant's existing 360-month sentences were at the bottom of the applicable career-offender guideline range.  (*E.g.*, R. 261, Response at 878.)

The district court held that the defendants were eligible for a sentence reduction:  the Fair Sentencing Act reduced the statutory penalties for offenses

---

[4] Though the United States argued that the defendants were categorically ineligible for relief, it would not so argue today.  Since *Terry v. United States*, 141 S. Ct. 1848 (2021), the United States has consistently agreed that a multi-drug conspiracy is a "covered offense" for purposes of Section 404 of the First Step Act so long as one of the controlled substances at issue was crack cocaine and the defendant was originally charged with violating § 841(b)(1)(A) or (B).

involving 50 grams of crack cocaine.  (R. 262, M. Woods Memorandum &
Order at 886-87; R. 264, T. Woods Memorandum & Order at 896-97.)  The
court found that the defendants' drug quantity yielded a lower offense level
under the 2018 Sentencing Guidelines Manual, but that their career-offender
classification required an offense level of 37 and guideline range of 360 months
to life imprisonment.  (R. 262, M. Woods Memorandum & Order at 888-89;
R. 264, T. Woods Memorandum & Order at 898-99.)  The court also noted
that, without the career-offender classification, the guideline ranges would
have been 292 to 365 months for Marshane Woods and 324 to 405 months for
Terry Woods.  (R. 262, M. Woods Memorandum & Order at 888-89; R. 264,
T. Woods Memorandum & Order at 898-99.)

Turning to the 18 U.S.C. § 3553(a) factors, the district court reasoned
that each defendant's "participation in this conspiracy was longstanding,"
that his "criminal history . . . was extensive," and that, "[a]t the time of
sentencing . . . , the Career Offender designation was clearly appropriate."
(R. 262, M. Woods Memorandum & Order at 889; R. 264, T. Woods
Memorandum & Order at 899.)  The defendants' post-sentencing conduct,
however, signaled a "reduced risk of recidivism and a diminished need for
deterrence."  (R. 262, M. Woods Memorandum & Order at 890; R. 264,
T. Woods Memorandum & Order at 900.)

With respect to Marshane Woods, the court found his post-sentencing conduct "exceptional," in that he had completed educational and vocational programming, earned his GED, maintained employment, and incurred no disciplinary sanctions in more than 16 years in custody.  (R. 262, M. Woods Memorandum & Order at 889-90.)  The court thus concluded that the career-offender guideline range yielded "a sentence which is greater than necessary." (*Id.*)  It granted Marshane Woods a one-level downward variance plus an additional 18-month variance for his rehabilitative efforts, *i.e.*, reducing his sentence to 306 months' imprisonment, followed by eight years' supervised release.  (*Id.* at 889, 891.)

With respect to Terry Woods, the court found his post-sentencing conduct "generally positive," though he had incurred four "relatively minor" disciplinary sanctions.  (R. 264, T. Woods Memorandum & Order at 899-90.) The court thus granted a one-level downward variance from the career-offender range, *i.e.*, reducing his sentence to 324 months' imprisonment, followed by eight years' supervised release.  (*Id.* at 899, 901.)

These appeals followed.  (R. 266, M. Woods Notice of Appeal, 904-05; R. 269, T. Woods Notice of Appeal, 909.)

## SUMMARY OF ARGUMENT

The district court's decision to reduce the sentences of Terry Woods and Marshane Woods under Section 404 of the First Step Act was procedurally reasonable. The district court determined that each defendant was eligible for a sentence reduction, identified the applicable (and undisputed) career-offender guideline range, fully considered their arguments for a sentence below that range, and ultimately granted each defendant a downward variance of three or four-and-one-half years, respectively.

The court's discretionary sentence reductions were also substantively reasonable. Each defendant participated in a large-scale drug-trafficking conspiracy for more than two years, had multiple prior felony drug convictions, and was rightly classified as a career offender when initially sentenced. The court nonetheless varied below that guideline range based on their positive post-sentencing conduct. The district court did not abuse its discretion by not granting a greater reduction. Nor did it abuse its discretion by not intuiting and explicitly considering arguments that the defendants raise for the first time on appeal. The district court's decisions should be affirmed.

8

# ARGUMENT

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citation omitted). The First Step Act provides that a district court "may . . . impose a reduced sentence" for an offense for which the "statutory penalties . . . were modified by section 2 or 3 of the Fair Sentencing Act," if no such reduction was previously granted. First Step Act, § 404(a), (b), 132 Stat. at 5222. And 18 U.S.C. § 3582(c)(1)(B) "serves as the vehicle for a proceeding under § 404 of the First Step Act." *United States v. Allen*, 956 F.3d 355, 357 (6th Cir. 2020). Because a violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) is a covered offense, *United States v. Barber*, 966 F.3d 435, 437 (6th Cir. 2020), the defendants were eligible for a sentence reduction.

But the First Step Act does not "*require* a court to reduce any sentence." First Step Act, § 404(c), 132 Stat. at 5222 (emphasis added). "Instead, the Act commits the decision of whether to reduce a sentence to the sound discretion of district courts." *Barber*, 966 F.3d at 437. Moreover, "[t]he First Step Act's limited, discretionary authorization to impose a reduced sentence is inconsistent with a plenary resentencing." *United States v. Alexander*, 951 F.3d 706, 708 (6th Cir. 2019). A district court "has wide latitude to provide the

9

process it deems appropriate" when considering a First Step Act motion. *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020). It has discretion, for example, to "recalculate the guidelines to account for intervening legal developments." *United States v. Maxwell*, 991 F.3d 685, 692 (6th Cir. 2021) (affirming lower court's decision to "calculate[] [a] sentencing range as the law existed at the time of his original offense, accounting for the new variance created by the Fair Sentencing Act," but without implementing any other "intervening changes affecting his career-offender status"); *see also United States v. Johnson*, 26 F.4th 726, 733 n.2 (6th Cir. 2022) (holding that Guidelines Amendment 782, which lowered the base offense level for most drug offenses by two levels, should be included when calculating the guideline range for a Section 404 proceeding). As the Supreme Court recently confirmed, a district court may consider "other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison)," although "the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments." *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022).

"[L]ike all sentences imposed by the district court, the resentencing decision under the First Step Act must not only be procedurally reasonable but substantively reasonable." *Boulding*, 960 F.3d at 783; *accord United States v.*

*Smithers*, 960 F.3d 339, 344 (6th Cir. 2020) (crediting the assumption that the review "resembles the reasonableness review that would apply to a sentence on direct appeal"); *but see United States v. Foreman*, 958 F.3d 506, 514 (6th Cir. 2020) ("the precise contours of [reasonableness] review will no doubt differ and evolve as we consider First Step Act appeals"). In the absence of a legal error "in recalculating the Guidelines to account for the Fair Sentencing Act's changes, appellate review should not be overly searching." *Concepcion*, 142 S. Ct. at 2404 (internal citation omitted).

Here, the district court's decisions to reduce the custodial sentences of Terry Woods and Marshane Woods to 324 and 306 months' imprisonment, respectively, and to reduce their terms of supervised release to the amended statutory minimum, were procedurally and substantively reasonable.

## I.   The defendants' reduced sentences are procedurally reasonable.

In deciding whether to reduce an eligible defendant's sentence under the First Step Act, the district court must correctly calculate the guideline range and consider the sentencing factors under 18 U.S.C. § 3553(a). *Boulding*, 960 F.3d at 776. It must also "adequately explain the chosen sentence to allow for meaningful appellate review." *United States v. Smith*, 958 F.3d 494, 500 (6th Cir. 2020) (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018)); *accord Barber*, 966 F.3d at 438. But "the appropriateness of brevity or length,

conciseness or detail, when to write, what to say, depends upon circumstances, and the law leaves much, in this respect, to the judge's own professional judgment." *Smith*, 958 F.3d at 500 (internal citation, quotation marks, and brackets omitted). "All that the First Step Act requires is that a district court make clear that it 'reasoned through [the parties'] arguments.'" *Concepcion*, 142 S. Ct. at 2404 (quoting *Maxwell*, 991 F.3d at 693).

The district court's decisions were procedurally sound. The court found that the defendants were eligible for sentence reductions under Section 404. (R. 262, M. Woods Memorandum & Order at 885-87; R. 264, T. Woods Memorandum & Order at 895-97.) It correctly identified the career-offender guideline range applicable to the defendants, while also noting the ranges that would apply without that classification. (*Id.*) And it considered the § 3553(a) factors and found that each defendant's post-sentencing conduct justified a sentence reduction. (R. 262, M. Woods Memorandum & Order at 889-90; R. 264, T. Woods Memorandum & Order at 899-900.) The court thoroughly explained its rationale for the sentence reductions, far exceeding the "brief orders" this Court has deemed adequate when a court declines to reduce a bottom-of-the-guidelines sentence. *United States v. Bailey*, 27 F.4th 1210, 1214 (6th Cir. 2022). The record thus establishes that the court correctly calculated the applicable guideline range, considered the defendants' arguments for a

lesser sentence, and "ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

The defendants contend, for the first time on appeal, that the court miscalculated the applicable guideline range—to which they had stipulated—because it failed to consider the effect of *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (*en banc*), or a guideline amendment lowering Terry Woods's criminal history category. (*E.g.*, Defendants' Brief at 19.) But "it is no surprise (and no error) that the district court did not consider" arguments that were never presented to it. *Barber*, 966 F.3d at 438; *accord Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring) ("Our adversary system is designed around the premise that the parties . . . are responsible for advancing the facts and arguments entitling them to relief."). Although the First Step Act requires a court to consider "the arguments before it," it does not require the court to anticipate and address arguments that are never raised by the parties. *Concepcion*, 142 S. Ct. at 2405. Here, given "[t]he First Step Act's limited, discretionary authorization" for courts to reduce sentences, *Alexander*, 951 F.3d at 708, the district court reasonably considered the facts and arguments actually presented by the parties before granting a sentence reduction. Not predicting or *sua sponte* considering the arguments the defendants now raise on appeal does not amount to procedural error.

13

Even now, the defendants have not shown that *Havis* must be applied in Section 404 proceedings. Although *Havis* held that certain offenses—*i.e.*, attempts and conspiracies—cannot qualify as "controlled substance offenses" under U.S.S.G. § 4B1.2(b), it announced a rule that this Court has repeatedly deemed applicable only on direct review, and the defendants' direct review ended over a decade ago. *Bullard v. United States*, 937 F.3d 654, 657, 661 (6th Cir. 2019); *see also United States v. McKinnie*, 24 F.4th 583 (6th Cir. 2022) (holding that *Havis* cannot constitute an extraordinary and compelling reason for release under § 3582(c)(1)(A)); *Jones v. United States*, 689 F.3d 621, 626 n.3 (6th Cir. 2012) (a change in interpreting the career-offender enhancement "affects only the procedure by which a district court calculates a defendant's sentence" and "is not a retroactive substance change in the law."). (*Contra* Defendants' Brief at 25-27 (asserting that *Havis* is retroactive here).) Moreover, because Section 404 "tells [a] court to alter just one variable in the original sentence, not all variables," the court was not required to implement *Havis* or to recalculate the defendants' guideline ranges without the career-offender classification. *Maxwell*, 991 F.3d at 689.

Nor was the court required to recalculate Terry Woods's criminal history category. (Defendant's Brief 34.) As Terry Woods acknowledges, his criminal history category only matters in the absence of a career-offender classification,

which otherwise required a criminal history category of VI. (*Id.*) Because the district court had discretion whether to revisit the career-offender classification, and because it elected not to implement *Havis* or other legal developments, there was no need to recalculate Terry Woods's criminal history category under a nonretroactive guideline amendment. U.S.S.G. App'x C., amend. 709 (eff. Nov. 1, 2007). Unlike Guideline Amendment 742's elimination of "recency" criminal history points, any effect of Guideline Amendment 709 was not "readily apparent" here. *See United States v. Montgomery*, 998 F.3d 693, 700 (6th Cir. 2021) (remanding for reconsideration of a grant of Section 404 relief due to a "readily apparent" guideline-calculation error under Guidelines Amendment 742).

In sum, this is not a case in which a court erroneously believed it could not consider certain evidence proffered by a defendant, *United States v. Martin*, 817 F. App'x 180, 183 (6th Cir. 2020), failed to address a well-developed argument, *United States v. Williams*, 972 F.3d 815, 817 (6th Cir. 2020), or allowed the defendant no opportunity to object to the guideline calculations, *Boulding*, 960 F.3d at 784. Instead, the court's decisions demonstrate "a reasoned basis" for reducing the defendants' sentences as it did, *Rita*, 551 U.S. at 356, and those decisions should be affirmed as procedurally reasonable.

15

**II.    The defendants' reduced sentences are substantively reasonable.**

"A claim that a sentence is substantively unreasonable is a claim that a sentence is too long," *i.e.*, that the court "placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). But the appropriate length of a sentence "is a matter of reasoned discretion, not math." *Id.* "Because the sentencing judge is in a superior position to find facts and judge their import under § 3553(a), this Court applies a great deal of deference to a district court's determination that a particular sentence is appropriate." *United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008) (brackets and quotation marks omitted); *accord Concepcion*, 142 S. Ct. at 2404 ("The broad discretion that the First Step Act affords to district courts also counsels in favor of deferential appellate review.").

"[T]his court's review of substantive reasonableness starts with the sentencing estimate provided by the Sentencing Commission." *United States v. Kirchhof*, 505 F.3d 409, 416 (6th Cir. 2007) (internal quotations omitted). Within-guideline sentences are "presumptively substantively reasonable, a presumption that naturally extends to sentences below the Guidelines range." *United States v. Pirosko*, 787 F.3d 358, 374 (6th Cir. 2015); *accord United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) ("simple logic compels the conclusion that, if a [within-guidelines] sentence . . . would have been presumptively

reasonable in length, defendant's task of persuading us that the more lenient sentence . . . is unreasonably long is even more demanding").

The defendants have not overcome that presumption here. Their offense was serious: they conspired to distribute—and actually distributed—kilograms of powder cocaine and crack cocaine. (R. 262, M. Woods Memorandum & Order at 889; R. 264, T. Woods Memorandum & Order at 899.) And their criminal histories were extensive: they each had multiple prior felony drug convictions. (*Id.*) Because their post-sentencing conduct indicated a "reduced risk of recidivism and a diminished need for deterrence," however, the district court elected to vary downward from the career-offender guideline range that had been "clearly appropriate" at their initial sentencings. (R. 262, M. Woods Memorandum & Order at 890; R. 264, T. Woods Memorandum & Order at 900.) Based on its consideration of the totality of the § 3553(a) factors, the court reduced Marshane Woods's sentence to 306 months' imprisonment, *i.e.*, four-and-one-half years below the bottom of his career-offender guideline range, and reduced Terry Woods's sentence to 324 months' imprisonment, *i.e.*, three years below the bottom of his career-offender guideline range. And the district court specifically mentioned the non-career-offender guideline range applicable to each defendant, ultimately imposing sentences within those

17

ranges.[5] (R. 262, M. Woods Memorandum & Order at 888-89, 891; R. 264, T. Woods Memorandum & Order at 898-99, 901.) That the court did not grant a greater downward variance does not prove any abuse of discretion nor require a remand for reconsideration. (*Contra* Defendants' Brief at 31-32.)

Nor have the defendants identified any other reason requiring such a remand. (*Contra* Defendants' Brief at 37 (positing that the "government's current support for a 1:1 ratio would have materially affected the § 3553(a) analysis").) It is undisputed that the government supports a pending legislative proposal, known as the EQUAL Act, H.R. 1693, 117th Cong. (2021), to equalize penalties for crack and powder cocaine and to do so retroactively. (*See* Defendants' Brief at 39-41.) But the Department of Justice's public support for the EQUAL Act did not create any new substantive argument previously unforeseeable to the defendants. After all, the government has long expressed its support for Congress and the Sentencing Commission to treat crack cocaine and powder cocaine identically,[6] and the one-to-one ratio at the

---

[5] The defendants now assert that the non-career-offender guideline range that would result from treating crack and powder cocaine identically in this case would be 262 to 327 months' imprisonment (Defendants' Brief at 42), and their current sentences fit comfortably within that range. Accordingly, a presumption of substantive reasonableness would apply to their sentences even under the revised calculations they proffer for the first time on appeal.

[6] *E.g.*, *Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity*, S. Hr'g 111-559, 111th Cong. 6 (Apr. 29, 2009) (statement of

heart of the EQUAL Act has been debated for at least two decades.  *See*, *e.g.*, *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012).  The defendants could have requested a policy-based variance from the guideline range due to the disparate treatment of crack cocaine and powder cocaine, but they did not.  And even if governmental support for the EQUAL Act may have increased the forcefulness or efficacy of such a request (*cf.* Defendants' Brief at 43 (asserting that it "would be strong support for a downward variance")), the absence of that support does not excuse the defendants' failure to raise the issue.

The defendants emphasize that the United States has "proactively taken the express position in other cases . . . that its support of a 1:1 ratio is a relevant basis for a policy-based downward variance" (Defendants' Brief at 41), but neither of the cases they cite for that proposition support their conclusion. In each of those cases, the government responded to a defense argument that crack cocaine and powder cocaine should be treated equally by acknowledging that the sentencing court had authority to consider "whether the powder-to-crack disparity was warranted."  *See* Gov't Sentencing Memorandum, *United*

---

Assistant Attorney General Lanny Breuer) ("the administration believes that Congress' goal should be to completely eliminate the disparity"); *id.* at 11 (questioning by Senator Lindsey Graham to confirm that "the administration believe[s] that Congress should set the sentencing ratio for crack and powder at 1:1"); *transcript available at* https://www.govinfo.gov/content/pkg/CHRG-111shrg57626/pdf/CHRG-111shrg57626.pdf (accessed Aug. 25, 2022).

*States v. Jefferson*, No. 1:21-cr-35, Doc. 51 (W.D. Mich. Aug. 6, 2021); Gov't

Sentencing Memorandum, *United States v. White*, No. 1:20-cr-44, Doc. 50

(W.D. Mich. Aug. 20, 2021).  Although the government deferred to the

court's discretion whether to grant a policy-based variance, it did not assert

that "its [own] support of a 1:1 ratio" justified a downward variance.  (*Contra*

Defendants' Brief at 41.)  Nor did it "proactively" raise the issue on its own

initiative.  (*Id.*)

The government's public support for a legislative resolution of the

crack/powder disparity does not require it to implement that normative policy

determination through Section 404, which applies only to covered offenses.

The Department supports passage of the EQUAL Act in part "to ensure that

our sentencing system is predictable and even-handed."  U.S. Dep't of Justice,

*Statement Before the S. Jud. Comm. Hearing on Examining Federal Sentencing for*

*Crack and Powder Cocaine* (June 22, 2021), *available at* http://cdn.cnn.com/cnn/

2021/images/06/22/equal.act.testimony-.final.pdf (accessed Aug. 25, 2022).

Likewise, the goal of the First Step Act was to "lessen[] undue disparities in

criminal sentencing."  *Maxwell*, 991 F.3d at 692-93.  It would be unusual to

create a new disparity—benefitting only those eligible for a sentence reduction

under Section 404 whose motions are still pending—based on the Department

of Justice's policy determination about how Congress should change the law.

Here, because *Havis* is unrelated to the one variable the First Step Act directed courts to modify, the district court reasonably determined that the applicable guideline range for these defendants' Section 404 proceedings was the career-offender range of 360 months to life imprisonment and used that range as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The court then exercised its authority to vary downward from that range, and it could have elected to vary further downward (*e.g.*, had it disagreed with the crack/powder disparity), but it did not abuse its discretion by not explicitly considering a policy rationale the defendants never raised.

"[T]he fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011) (emphasis original); *accord Concepcion*, 142 S. Ct. at 2404 ("In exercising its discretion, the court is free to agree or disagree with any of the policy arguments raised before it."). And "when a district court chooses not to disagree with the Guidelines on policy grounds," this Court "cannot say that [the court] abused its discretion based on [this Court's] own judgment of 'the soundness of the guidelines range.'" *United States v. Souders*, 747 F. App'x

269, 278 (6th Cir. 2018). That is true "no matter how persuasive an appellate court finds the defendant's policy arguments." *United States v. Lynde*, 926 F.3d 275, 281 (6th Cir. 2019) (quoting *Souders*, 747 F. App'x at 278). Defining crimes and fixing penalties are legislative functions, *Souders*, 747 F. App'x at 278, so this Court should refrain from declaring the crack-cocaine guideline provisions substantively unreasonable or directing lower courts to calculate the guideline range for Section 404 purposes as if crack were powder cocaine. The defendants' arguments about the crack/powder disparity, first seen in this appeal, do not establish substantive unreasonableness.

"It is the essence of discretion that it may properly be exercised in different ways and likewise appear differently to different eyes." *United States v. Richards*, 659 F.3d 527, 551 (6th Cir. 2011) (internal citation omitted). The "debate [about an appropriate sentence] turns on perspective—and the perspective that counts, so long as it is reasoned, is the district court's, not the defendant's." *United States v. Johnson*, 934 F.3d 498, 501 (6th Cir. 2019). The district court's reasoned decisions should be affirmed.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's discretionary determinations to grant sentence reductions to Terry Woods and Marshane Woods under Section 404 of the First Step Act.

Respectfully submitted,

Francis M. Hamilton III
United States Attorney

by:   *s/ Debra A. Breneman*
Debra A. Breneman
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee  37902
(865) 545-4167

## CERTIFICATE OF SERVICE

I certify that, on August 29, 2022, this brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including counsel for defendants.

*s/ Debra A. Breneman*
Debra A. Breneman
Assistant United States Attorney

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

UNITED STATES OF AMERICA,
      Plaintiff-Appellee,
   v.

MARSHANE & TERRY WOODS,
      Defendants-Appellants.

On appeal from the United
States District Court for the
Eastern District of Tennessee
   No. 2:03-cr-69

| ENTRY NO. | DESCRIPTION OF ENTRY | PAGE ID# RANGE |
|:---:|---|:---:|
| 2 | Indictment | n/a |
| 117 | Judgment | n/a |
| 118 | Judgment | n/a |
| 203 | T. Woods Amended Judgment | 457-461 |
| 204 | M. Woods Amended Judgment | 462-468 |
| 218 | M. Woods Motion | 493-494 |
| 219 | M. Woods Memorandum | 495-525 |
| 220 | T. Woods Motion | 526-527 |
| 221 | T. Woods Memorandum | 528-542 |
| 231 | M. Woods Supp. Motion | 581-594 |
| 232 | T. Woods Supp. Motion | 595-608 |
| 260 | Response | 863-872 |
| 261 | Response | 873-883 |
| 262 | M. Woods Memorandum & Order | 884-891 |
| 264 | T. Woods Memorandum & Order | 894-901 |
| 266 | M. Woods Notice of Appeal | 904-905 |
| 269 | T. Woods Notice of Appeal | 909 |

*s/ Debra A. Breneman*
Debra A. Breneman
Assistant United States Attorney